```
ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
CAROLINA ESCALANTE
Assistant U.S. Attorney
Arizona State Bar No. 026233
MATTHEW BINFORD
Assistant U.S. Attorney
Arizona State Bar No. 029019
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Fernanda.Escalante.Konti@usdoj.gov
Email: Matthew.Binford@usdoj.gov
Attorneys for Plaintiff
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Kevin Dean McCoy,<br><br>Defendant. | CR 17-00317-003-PHX-JAT(DKD)<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Kevin Dean McCoy, hereby agree to dispose of this matter on the following terms and conditions:

**1.  PLEA**

The defendant will plead guilty to Count 1 and Count 5 of the First Superseding Indictment. Count 1 of the First Superseding Indictment charges the defendant with a violation of Title 21, United States Code (U.S.C.), Section 846, Conspiracy to Possess With Intent to Distribute Controlled Substances, with the underlying objects of the Conspiracy being the following: a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(i), to possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, a Class A felony offense; a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii), to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine,



its salts, isomers, and salts of its isomers, a Schedule II controlled substance, a Class A felony offense; and a violation of 18 U.S.C. §§ 841(a)(1) & (b)(1)(B)(ii), to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance, a Class B felony offense. Count 5 of the First Superseding Indictment charges the defendant with a violation of 18 U.S.C. § 1956(h), Money Laundering Conspiracy, a Class C felony offense. The defendant shall also admit to the Forfeiture Allegations in the First Superseding Indictment.

2. **MAXIMUM PENALTIES**

    a. A violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A), is punishable by a maximum fine of $10,000,000.00, a minimum term of imprisonment of 10 years and a maximum sentence of life imprisonment, or both, and a term of supervised release of at least 5 years up to life. A violation of 18 U.S.C. § 1956(h), is punishable by a maximum 20 years in prison, $500,000.00 fine, or twice the value of the property, whichever is greater, or both, and not more than 3 years of supervised release.

    b. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

        (1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

        (2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

        (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

        (4) pay upon conviction a $100.00 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 301(a)(2)(a).

c.  The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d.  The defendant understands and acknowledges that pleading guilty may result in the termination or denial of certain food stamp, social security, and other benefits for defendant and the defendant's immediate family pursuant to 21 U.S.C. §§ 862 and 862a.

3.  **AGREEMENTS REGARDING SENTENCING**

a.  Stipulation: Drug Quantity. In determining the reasonable sentence in this case, the parties stipulate, pursuant to Fed. R. Crim. P. 11(c)(1)(C) and U.S.S.G. § 6B1.4, that the heroin (a Schedule I controlled substance), methamphetamine (a Schedule II controlled substance) and cocaine (a Schedule II controlled substance) the defendant conspired to possess with the intent to distribute resulted in the marihuana equivalency of at least 30,000 kilograms of marihuana but less than 90,000 kilograms of marihuana. Therefore, the parties agree that the offense level under the guidelines should be determined only as to this agreed upon amount. Should this case, for any reason, proceed to trial, the government is not bound by this agreement of the parties with regard to the amount of drugs attributable to the defendant.

b.  Stipulation: Co-defendant Amber Nicole Worrell's Guilty Plea. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that this plea agreement is contingent upon the successful guilty plea of the co-defendant Amber Nicole Worrell. If Amber Nicole Worrell does not plead guilty in this case, or if the Court rejects or refuses to accept her plea agreement, the United States shall be entitled to withdraw from this plea agreement and will not be bound by any of its terms.

c.  Recommendation: Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance

of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

  d. <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

  e. <u>Criminal History Options</u>. This plea agreement is expressly conditioned upon the accuracy of the defendant's criminal history as known by the government at the time of the plea. The discovery of any criminal history in addition to that known shall entitle the government to withdraw from this agreement.

  f. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

**4.   AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.   Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss Counts 2, 3, 4, 6 and 7 of the First Superseding Indictment.

b.   This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.   COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.   If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.   If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.   WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255

(habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

   a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

   c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

   (1) criminal convictions, history of drug abuse, and mental illness; and

   (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

   a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of

payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

  b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, or which was used to facilitate the commission of his offense, including the following property:

(1)   One Apmex 50 Troy oz. silver bar;

(2)   Five Apmex 1kg silver bars;

(3)   Two Valcambi Suisse 1 oz platinum bars;

(4)   Two Credit Suisse 1 oz gold bars;

(5)   One Argor-Heraeus 1 oz gold bar;

(6)   One Ebay 1 oz gold bar;

(7)   One customized men's 18K Gold Rolex Watch;

(8)   One customized Baume Mercier Riviera Automatic Men's Chronograph Watch;

(9)   One Men's Silver HCW 806 Lost Skulls Limited Edition 076/750 Watch;

(10)   One Men's 14K 2-tone yellow and white and gold link bracelet;

(11)   Two Men's 14K white gold bracelet;

(12)   One Seattle Seahawks Super Bowl XL ring;

(13)   One black in color, 2010 Lincoln Navigator bearing Arizona license plate BGZ1511 with VIN # 5LMJJ2H51AEJ01705 registered to Lisa Hettich at 8940 W. Olive Drive, Unit #40 in Peoria, Arizona;

(14)   One Texas Weapons System AK-47 assault rifle bearing serial number 1-50373-03;

(15)   One AK-47 magazine;

(16)   One Bohica brand .50 caliber sniper rifle bearing serial number 0940 with boxes of matching ammunition;

(17)   One Masterpiece Arms brand Uzi bearing serial number V9128 with two magazines;

(18)   All 9mm ammunition;

(19)   One HK .22 caliber pistol/rifle with serial number WHO16204;

(20)   One Benjamin brand .22 caliber rifle with serial number 813X36370;

(21)   All .22 caliber ammunition;

(22)   One Ruger Mark 3 brand .22 caliber pistol with serial number 274-24519 with a gun case and two magazines;

(23)   One Mossberg 12 gauge shotgun with serial number V0068774;

(24)   One Remington brand 1911 .45 caliber pistol with serial number RH63615A and two magazines;

(25)   One Colt brand 1911 .45 caliber pistol with serial number 38SS07878 and two magazines;

(26)   One Colt brand 1911 .45 caliber pistol with serial number ONX0067 and two Magazines; and

(27)   $15,314.40 U.S. Currency.

    c.    The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

  d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

  e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this indictment or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

  f. The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g.   The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

h.   The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

9.   **ELEMENTS**

**Controlled Substances Conspiracy**

On or between approximately June 6, 2015, and continuing to on or about March 7, 2017, in the District of Arizona:

1. Two or more persons made an agreement to possess with intent to distribute controlled substances; and
2. The defendant became a member of the conspiracy knowing its object and intending to help accomplish it.
3. The controlled substances in question were the following:
    a. 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance;
    b. 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance; and

c. 500 grams or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance.

**Possession of Controlled Substances with Intent to Distribute**

(Underlying Object of Controlled Substances Conspiracy)

1. The defendant, or another member of the conspiracy, knowingly possessed controlled substances; and
2. The defendant, or another member of the conspiracy, possessed the controlled substances with the intent to distribute it to another person.

**Money Laundering Conspiracy**

1. Between March 26, 2016, and March 7, 2017, in the District of Arizona and elsewhere, two or more persons made an agreement to commit promotional and/or concealment money laundering; and
2. The defendant became a member of the conspiracy knowing one or more of its objects and intending to help accomplish one or more of them.

**Promotional and Concealment Money Laundering**

(The Underlying Objects of the Conspiracy)

1. The defendant or another member of the conspiracy conducted or attempted to conduct a financial transaction affecting interstate commerce;
2. The defendant or another member of the conspiracy did so with the intent to promote the carrying on of said specified unlawful activity;
3. The defendant or another member of the conspiracy knew that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity; and
4. The property involved in the financial transactions represented the proceeds of some form of unlawful activity.

## 10. FACTUAL BASIS

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

From at least on or about June 6, 2015, and continuing to on or about March 7, 2017, in the District of Arizona and elsewhere, I, KEVIN DEAN MCCOY, along with others, did knowingly combine, conspire, confederate and agree to possess with intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, a Schedule II controlled substance. I also admit that from on or about March 26, 2016, to on or about March 7, 2017, I, along with others, did knowingly and intentionally combine, conspire, confederate and agree to conduct financial transactions affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, that is, the possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), with the intent to promote the carrying on of said specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and while knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

I was a member of a Drug Trafficking Organization (DTO) that sold heroin, methamphetamine, and cocaine on at least three different marketplaces on the Darknet, under the vendor name "Iceman21." I sold the controlled substances to individuals throughout the entire United States in exchange for bitcoin, a digital currency, and delivered the drugs to purchasers via the United States Postal Services (USPS).

Myself and co-conspirators began selling drugs on the Darknet on approximately June 6, 2015. We converted the bitcoin drug proceeds into tangible currency by advertising the bitcoin for sale on localbitcoins.com under the vendor name "Bitman90" and selling the bitcoin to individuals throughout the United States in exchange for cash. Individuals who purchased the bitcoin were instructed to deposit the U.S. currency in exchange for the bitcoin into accounts at Bank of America ("BOA") or Wells Fargo ("WF").

I was the primary member responsible for creating the Iceman21 vendor pages on multiple Darknet marketplaces where we advertised the sale

of cocaine, methamphetamine, and heroin to anywhere in the United States. I was also the primary member who created the Bitman90 profile on localbitcoins.com to sell the bitcoin proceeds from the Darknet drug sales in exchange for fiat U.S. Currency. I instructed individuals purchasing the bitcoin to make cash deposits for the bitcoin into bank accounts opened by Peggy Gomez and Sylvester Ruelas on behalf of the DTO. My fiancé Amber Nicole Worrell helped me operate the Iceman21 vendor pages on the Darknet to operate the Darknet vendor pages so she could further the goals of the Iceman21 DTO. I instructed her how to operate the Darknet and to purchase shipping and storage supplies for the drugs. Our goal was to be efficient, make more money and grow the Iceman21 DTO.

I was aware that on April 29, 2016, Peggy Gomez, opened a business bank account at Bank of America (BOA), listing the business for the account as "Gomez Cleaning," which was a front, fictitious business, intended to make the account activity with drug proceeds appear lawful and remain undetected. BOA closed the account on September 29, 2016, because of suspicious activity. I was aware that because BOA intended to close the account, on September 21, 2016, Peggy V. Gomez opened another front business account at Well Fargo for a fictitious business named "Peggy Gomez Cleaning Services." Both the BOA and WF business accounts were used to deposit illegitimate proceeds obtained from selling drugs and bitcoin, and to pay for expenses required to maintain and facilitate the drug trafficking business and further the goals of the DTO, such as postal expenses, traveling expenses, and wages for DTO members. I made numerous direct deposits with the proceeds of drug sales into those accounts. I also made numerous deposits into another WF business account held by Sylvester Ruelas for "A-1 Mision Automotive Repair." Similar to the Gomez cleaning accounts, I would make direct deposits of U.S. currency that were proceeds of drug sales into the A-1 Mision accounts. When communicating with co-conspirators about the deposit of drug proceeds into the accounts, I would often refer to the Gomez cleaning accounts as the "cleaners" and to the A-1 Mision account as "A1" or "Mision." The analysis of my cellular telephones provided in discovery contains several messages I sent during the conspiracy providing the amounts of money that I would deposit into either account. I have learned from discovery that law enforcement seized the WF account for Peggy Gomez Cleaning Services after my arrest, and that it had a total of $15,314.40 U.S. Currency that was proceeds from the drugs sales and money laundering activity of the DTO.

The heroin, methamphetamine, and cocaine sold on the Darknet marketplaces was stored inside an office located at 3164 S. Country Club, Mesa, Arizona, that was affixed to a business named VIP Motorsports. I visited the office before it was leased to assure it would be a good location from where to operate the Iceman21 DTO. Prior to leasing that location, drugs were stored and packaged at whatever residence I was living at the time. The office area a VIP Motorsports was used as both a storage facility for the drugs and as a distribution headquarters where orders were prepared and mailed out.

Once orders were placed to Iceman21 on the Darknet, I would ensure the order information was sent to Peggy Gomez or other co-conspirators so they could prepare the orders. I would often send orders and direction via email to Sylvester Ruelas, Amber Nicole Worrell, Peggy Gomez, and Liliana Siberian. The forwarded information included the type and amount of drug(s) purchased, the recipient name and address provided by the buyer, and the shipping method purchased by the buyer, express or priority. The BOA or WF accounts were used to purchase mailing supplies so that my co-conspirators could prepare parcels at VIP Motorsports. On many occasions, I would purchase shipping supplies to further the shipment of the drug parcels.

By preparing the parcels, I mean dividing bulk amounts of drugs into smaller amounts consistent with the orders I received on the Darknet, weighing the drugs on a scale to ensure accuracy, securing the drugs in a baggie, concealing the packaged drugs in a USPS Priority Mail envelope, affixing the required postage to the cardboard envelope, and listing sender and recipient information. The sender information was also fictitious to avoid detection or tracing. The recipient information was listed exactly as provided by the purchasers on the Darknet. Once the Iceman21 drug parcels were ready for delivery, they were mailed to recipients throughout the United States via the United States Postal Service. Logs were maintained documenting the orders received and fulfilled. I would follow-up on the Darknet marketplaces to ensure customers were satisfied, had positive feedback, and actually received the ordered drugs. If parcels were not successfully delivered to the recipients/purchasers, we would refill the order.

I would also keep track of the proceeds. I would ensure deposits were being made into either the BOA or WF accounts consistent with the drug and/or bitcoin sales. Co-conspirators would contact me to inquire on the status of the proceeds, and I would inform me if a deposit or withdrawal was made and update on the status of the bitcoin liquidation. I am aware that all of the Iceman21 DTO member received wages from the sale of the drugs on the Darknet, which was converted into cash by selling the bitcoin on localbitcoins.com.

I used multiple different cellular telephone numbers during the conspiracy to communicate with other members, which included forwarding orders, providing instructions, asking for directions, inquiring on statuses and providing updates. I am aware that investigators executed search warrants on multiple of the email accounts possessed by myself and my fiancé Amber Nicole Worrell, which contained multiple emails related to the drug-trafficking activity for the Iceman21 DTO.

On March 9, 2017, law enforcement officials executed a search warrant at VIP Motorsports. Sylvester Ruelas and Peggy Gomez were amongst the individuals present when officers arrived. I arrived after the warrants were executed and there was no law enforcement presence.

During the execution of the search warrant at VIP Motorsports, officers located 26.3 grams of what resulted to be actual methamphetamine pursuant a forensic analysis at the DEA laboratory, 14.6 grams of cocaine, and 1106.2 grams of heroin contained in plastic containers concealed inside a black filing cabinet. Some of the methamphetamine and heroin found inside the cabinet was divided in blue baggies. Officers also located plastic wrapping and baggies, USPS packaging labels, and drug ledgers inside the black cabinet. Officers also located a backpack with residue, a box of USPS packaging and a box of padded envelopes. On the desk of the office, officers located multiple cards in Peggy Gomez's name, her Samsung cellular telephone, and a laptop computer (bearing serial number 5CD6128TH4). Sylvester Ruelas had four phones on his person and two cell phones inside his Lincoln Navigator (BGZ1511) that were also seized: four iPhones, one Samsung cell phone, and one black HTC cell phone. Analysis of Gomez's and Ruelas's cell phones reveals my involvement and role in the Iceman21 DTO, and the multiple phone numbers I used to communicate about the drugs sales and laundering of the bitcoin drug proceeds.

I have learned from discovery, that on that same day, law enforcement officers contemporaneously executed a search warrant at Sylvester Ruelas's residence, located at 8490 W. Olive Avenue, Unit #40, Peoria, Arizona, and located 658.6 grams of heroin under the bed in his daughter's bedroom that was primarily occupied by him. Co-defendant Sylvester Ruelas would obtain drugs for the Iceman21 DTO. I am also aware that in Ruelas's daughter's bedroom, positioned within reach of the heroin, officers located the following firearms and related accessories: (1) a Texas Weapons System AK-47 assault rifle bearing serial number 1-50373-03; (2) an AK-47 magazine; (3) a Bohica brand .50 caliber sniper rifle bearing serial number 0940 with boxes of matching ammunition; (4) a Masterpiece Arms brand Uzi bearing serial number V9128 with two magazines; (5) 9mm ammunition; (6) a HK .22 caliber pistol/rifle with serial number WHO16204; (7) a Benjamin brand .22 caliber rifle with serial number 813X36370; (8) .22 caliber ammunition; (9) a Ruger Mark 3 brand .22 caliber pistol with serial number 274-24519 with a gun case and two magazines; (10) a Mossberg 12 gauge shotgun with serial number V0068774; (11) a Remington brand 1911 .45 caliber pistol with serial number RH63615A and two magazines; (13) a Colt brand 1911 .45 caliber pistol with serial number 38SS07878 and two magazines; and (14) a Colt brand 1911 .45 caliber pistol with serial number ONX0067 and two magazines. I also learned agents seized all of the aforementioned items under Section 8(b) in the Forfeiture, Civil, and Administrative Proceedings section of this plea agreement, from co-defendant Sylvester Ruelas, which included multiple metal bars, multiple pieces of jewelry and a Lincoln Navigator bearing license plate BGZ1511.

I also learned that throughout the conspiracy, federal agents made undercover purchases from Iceman21 totaling in approximately 1.8 grams of cocaine, 1.6 grams of heroin, and what resulted to be 2.16 grams of methamphetamine with a 100% plus/minus 4% purity pursuant a DEA

forensic analysis.

I have learned from discovery that federal agents surveilling DTO members intercepted at least 32 parcels that correlated to orders I received on the Darknet, prepared and mailed by myself and/or co-conspirators, and contained cocaine, heroin and methamphetamine. Federal agents seized a total of 10.9 grams of cocaine, 119.6 grams of heroin, and 22.7 grams of methamphetamine from those intercepted parcels. I also learned that federal agents made undercover purchases of 1.8 grams of cocaine, 1.6 grams of heroin, and 3.3 grams of methamphetamine from Iceman21. From June 6, 2015, to about March 7, 2017, the DTO sold at least 119.2 grams of cocaine, 3020.4 grams of heroin, and 2645 grams of methamphetamine on three different marketplaces on the Darknet under the vendor name Iceman21.

Several of the drugs seized from parcels have been forensically analyzed at the Drug Enforcement Administration's laboratory. One of the parcels mailed on October 14, 2016, that was intended to a buyer in Kansas City, Missouri, was found to contain 13.42 grams of actual methamphetamine and 57.9 grams of heroin. One of the parcels mailed on November 18, 2016, that was intended to a buyer in Little Rock, Arkansas, was found to contain 1.7 grams of heroin. Another parcel mailed on November 18, 2016, intended to a buyer in Atlanta, Georgia, was found to contain 3.56 grams of methamphetamine with a 99% plus/minus 4% purity. Another parcel mailed on November 18, 2016, intended to a buyer in Williamsville, New York, was found to contain 2.1940 grams of methamphetamine with a 100% plus/minus 4% purity. A parcel mailed on December 15, 2016, intended for a buyer in Northville, Michigan, contained 1.0393 grams of methamphetamine with a 100% plus/minus 4% purity. A parcel mailed on December 22, 2016, intended for a buyer in Fredericksburg, Virgina, contained 27.12 grams of methamphetamine with a 98% plus/minus 4% purity. Another parcel mailed on December 22, 2016, intended for a buyer in Austin, Texas, contained 3.47 grams of methamphetamine with a 99% plus/minus 4% purity.

From June 6, 2015, to about March 7, 2017, the DTO sold at least 1457.5 grams of cocaine, 4860 grams of heroin, and 3187 grams of methamphetamine on three different marketplaces on the Darknet under the vendor name Iceman21. Those amounts account for the aforementioned undercover purchases.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

This agreement has been read to me in English, and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional

agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

10/7/18
Date

KEVIN DEAN MCCOY
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

10/7/18
Date

LOYD C. TATE
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

10·24·18
Date

*[signature] Abbie B Marl for*
CAROLINA ESCALANTE &
MATTHEW BINFORD
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

21 AUG 19
Date

HONORABLE JAMES A. TEILBORG
Senior United States District Judge

- 20 -